```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
L.H., Individually, and as Parent and
Guardian of T.D., and T.D.
                       Plaintiffs,                12-CV-6541
             v.                                DECISION AND ORDER

COUNTY OF LIVINGSTON, THOMAS E. MORAN,
AND LINDSAY P. QUINTILONE

                       Defendants,
_____
```

## INTRODUCTION

Plaintiffs, L.H., individually, and as parent and guardian of T.D., and T.D., (collectively, "Plaintiffs"), bring this action pursuant to 42 U.S.C. Section 1983 ("§ 1983") and New York state law against Defendants Livingston County ("the County"), Thomas E. Moran, individually and in his official capacity as the former District Attorney of Livingston County ("Moran"), and Lindsay P. Quintilone, individually and in her official capacity as a former Assistant District Attorney of Livingston County ("Quintilone")(collectively, "Defendants"). Plaintiffs allege claims for false arrest, malicious prosecution, violations of due process, negligent training and supervision, and negligent and intentional infliction of emotional distress in connection with T.D.'s allegedly unlawful arrest and prosecution on charges of abusing his younger half-sister. Defendants move to dismiss Plaintiffs' complaint in its entirety against all Defendants. Plaintiffs oppose the motion. For the reasons discussed herein,

the Court grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

The following facts are taken from the Plaintiffs' amended complaint. (Docket no. 7.) On November 8, 2010, T.D., a minor at all relevant times, was accused by his step-mother of abusing his half-sister ("Complainant") while he was visiting his family at his father's home. T.D.'s step-mother made a complaint to the New York State Police and commenced a proceeding in Monroe County Family Court. Family Court issued a "stay away" Order of Protection against T.D. in favor of his step-mother and all of T.D.'s half-siblings.

Following the complaint made to the New York State Police, ADA Quintilone interviewed the Complainant to make a video recording of her testimony to present to a Livingston County grand jury. Quintilone interviewed Complainant twice on December 10, 2010 and twice on December 17, 2010. Complainant did not implicate T.D. in the first three sessions. Prior to the fourth session, Quintilone told the Complainant that her mother was watching her through a one-way mirror, and she twice told her that her mother could hear her. Complainant's mother then knocked on the mirror to make her presence known to the Complainant. She knocked on the mirror again midway through the fourth session. Complainant then provided inculpatory testimony accusing T.D. of sexually abusing her.

Following this session, a promise of ice cream was made to Complainant.

In addition to allowing Complainant's mother to watch her daughter testify, an investigator from the New York State Police and a social worker were also present in the adjoining room watching Complainant give her grand jury testimony. Plaintiffs allege that this is prohibited by state law which requires grand jury proceedings, including the videotaping of the testimony of a child, to be conducted in secret.

Plaintiffs also allege that Quintilone presented the tapes out of order to the grand jury, by presenting the fourth session first, and advised the grand jury that the fourth session was the only relevant testimony. The grand jury indicted T.D. with two counts of Aggravated Sexual Abuse in the Second Degree and one count of Endangering the Welfare of a Child. T.D. was arrested on March 3, 2011. On March 8, 2011, T.D. was released on bail and an Order of Protection against T.D. in favor of all persons under fifteen years of age was issued, prohibiting T.D. from attending school.

Because of the irregularities in obtaining Complainant's testimony and in the grand jury proceedings, the criminal charges against T.D. were dismissed on July 7, 2011.

Based on these facts, Plaintiffs allege the following nine causes of action against the Defendants: malicious prosecution under state law and § 1983, false arrest under § 1983, negligent

training and supervision under state law and § 1983, violations of due process under state law and § 1983, and negligent and intentional infliction of emotional distress under state law.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion to dismiss, the Court "'must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.'" See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir.2008) (quoting Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir.2007)). However, the court may disregard a plaintiff's "legal conclusions, deductions or opinions couched as factual allegations." See, e.g., In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir.2007) (citation omitted).

### A.   General Municipal Law § 50-e Notice of Claim

New York General Municipal Law § 50-e (1)(a) requires that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation...the notice of claim shall...be served in accordance with the provisions

of this section within ninety days after the claim arises." Plaintiffs' state law claims for negligent and intentional infliction of emotional distress, negligent training and supervision, and violations of due process are subject to the notice of claim requirements. See e.g. Dzwonczyk v. Syracuse City Police Dept., 710 F. Supp.2d 248, 271-272 (N.D.N.Y. 2008); Rose v. County of Nassau, 904 F.Supp.2d 244, 248 (E.D.N.Y. 2012); DC3, LLV v. Town of Geneva, 783 F.Supp.2d 418, 423 (W.D.N.Y. 2011).

The allegations giving rise to Plaintiff's state law claims, other than his claim for malicious prosecution, occurred in December 2010 and March 2011. Plaintiffs' complaint alleges that a notice of claim was served on September 21, 2011, more than ninety days after the causes of action accrued.  Accordingly, Plaintiffs did not timely file a notice of claim with respect to these claims. Therefore, Plaintiffs' state law claims for negligent and intentional infliction of emotional distress, negligent training and supervision, and violations of due process (Second, Third, Fourth and Fifth Causes of Action) are dismissed.

### B.   § 1983 Claims against County and Official Capacity Claims

The County

Plaintiff's § 1983 claims against the County must also be dismissed as Plaintiffs have not plausibly alleged that the actions

were carried out pursuant to an unlawful policy or custom. A plaintiff who seeks to recover under § 1983 against a municipality must show that a constitutional violation resulted from a municipal policy or custom. See Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 694 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004)(superseded in part on other grounds); See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir.2007). Plaintiffs have not pleaded facts from which the Court could infer that the alleged actions occurred pursuant to an official policy or custom and have not responded to Defendants' argument regarding their failure to allege such facts.

Plaintiffs conclusory allegations that there existed a "pattern or practice" of failing to properly train and supervise district attorneys on New York state law regarding the proper procedures for conducting videotaped interviews for grand jury proceedings are insufficient to properly allege a cause of action against the County. Plaintiffs rely on one instance in which Quintilone allegedly acted unlawfully, however, one allegedly unlawful action by an assistant district attorney will not subject the County to liability under § 1983. See Connick v. Thompson, 131 S.Ct. 1350 (2011)("A district attorney is entitled to rely on prosecutors' professional training and ethical obligations in the absence of specific reason, such as a pattern of violations, to believe that those tools are insufficient to prevent future

constitutional violations in 'the usual and recurring situations with which [the prosecutors] must deal.'"). Accordingly, the Plaintiff's claims under § 1983 against the County are dismissed. The only remaining state law claim for malicious prosecution is brought against Quintilone only. Accordingly, by dismissing the § 1983 claims against the County all claims against the Defendant County are dismissed.

<u>Moran and Quintilone in their Official Capacities</u>

"'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county'" and is therefore entitled to invoke Eleventh Amendment immunity." <u>Peters v. City of Buffalo</u>, 848 F.Supp.2d 278, 384 (W.D.N.Y. January 30, 2012)(citing <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 535-36 (2d Cir.1993)). Eleventh Amendment immunity will insulate a prosecutor from suits stemming from "the decision of whether or not, and on what charges, to prosecute." <u>Id.</u> Accordingly, Moran and Quintilone are immune from suit in their official capacities for those decisions. With respect to any other conduct, an official capacity suit against a prosecutor is considered a suit against him in his official capacity as an employee of the municipality. <u>Id.</u>  However, for the same reasons the claims are dismissed against the County, the official capacity

claims must be dismissed against Moran and Quintilone[1]. See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir.2007)("An official capacity suit against a public servant is treated as one against the governmental entity itself.").

### C.  Individual Claims against Moran

The only allegation relating to Moran in the Complaint is that during the relevant period he was the District Attorney of Livingston County and Quintilone's supervisor. Based on this fact, Plaintiffs allege that Moran improperly trained and supervised Quintilone and was, therefore, the cause of her allegedly unlawful actions. However, Moran is absolutely immune from suit based on his actions in supervising Quintilone. See Van de Kamp v. Goldstein, 555 U.S. 335, 344-345 (2009) ("Prosecutors involved in such supervision or training...enjoy absolute immunity").  Further, Plaintiffs have not alleged that Moran was personally involved in any alleged constitutional deprivation, a pre-requisite to personal liability under § 1983. See Grullon v. City of New Haven, 720 F.3d 133 (2d Cir. 2013). The only remaining state law claim, malicious prosecution, is brought against Quintilone only.  Accordingly, Moran is dismissed as a defendant in this lawsuit.

---

[1] As discussed below, Quintilone is entitled to absolute immunity for the remaining state law claim, malicious prosecution, and this claim is not brought against Moran.  Therefore, all official capacity claims must be dismissed.

**D.   Claims Against Quintilone**

Plaintiffs assert the following remaining claims against Quintilone in her individual capacity: (1) malicious prosecution under state law[2] and § 1983, (2) due process violations under § 1983, and (3) false arrest under § 1983.

Absolute Immunity

A prosecutor enjoys absolute immunity for actions taken performed as an advocate for the state, however, actions performed in an investigatory capacity are distinguished and are entitled only to qualified immunity. See Hill v. City of New York, 45 F.3d 653, 660-663 (2d Cir. 1995). With respect to Plaintiffs' claims relating to Quintilone's presentation of evidence to the grand jury and her initiation and pursuit of criminal charges against T.D., Quintilone is entitled to absolute immunity, as such actions were performed in her role as an advocate. See Hill, 45 F.3d at 661-662; See also Wyllie v. District Atty. Of County of Kings, 2 A.D.3d 714, 719 (2nd Dep't. 2003). Accordingly, Plaintiff's malicious prosecution claims are dismissed.

However, "such immunity does not protect efforts to manufacture evidence that occur during the investigatory phase of a criminal case. Hence, if the videotapes were made to collect or

---

[2] Plaintiffs also assert an official capacity claim, but, as discussed herein, Quintilone is entitled to absolute immunity for malicious prosecution.

corroborate evidence against [plaintiff] in order to get probable cause to arrest her, the act of making the tapes receives only qualified immunity." Hill, 45 F.3d at 662.  Should discovery reveal that Quintilone's actions in procuring the fourth videotape were an attempt to fabricate evidence implicating T.D., Quintilone would not be entitled to absolute immunity. Id.

In Hill, the Second Circuit held, in very similar circumstances, that the collection of videotaped testimony from a child to be presented before a grand jury may be considered an investigatory act, which would only be entitled to qualified immunity, but that the issue could only be resolved by examining the circumstances surrounding the investigation of the alleged crime and the taking of the testimony, particularly "the lapse of time between the manufacture of evidence, the impanelling of a grand jury and the ultimate arrest." Id.  Here, Complainant's testimony was taken three months prior to T.D.'s arrest. Cf. Hill, 45 F.3d 653 ("the investigation, arrest, and arraignment of Hill occurred within a week of Joseph's visit to the hospital. Nevertheless, as Adago did not order Hill's arrest until after filming the second interview, it is possible to conclude that this latter videotape was made, at least in part, to provide probable cause for Hill's arrest.").

Because the Court finds, as in Hill, that it is not possible to determine whether Quintilone was acting in as an investigator or

an advocate when taking the video testimony of the Complainant based solely on the allegations in the complaint, Defendants' motion to dismiss the remaining claims based on absolute immunity is denied.  However, this does not preclude Quintilone's assertion of absolute immunity for these actions following discovery.

Qualified Immunity

Defendants also contend that Quintilone is entitled to qualified immunity for her actions in procuring Complainant's testimony.  Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Defendants contend that "[n]o decision by the Second Circuit Court of Appeals has held that the actions complained of - i.e. allowing a parent to observe their child provide grand jury testimony, or even a violation of [the] prohibition against disclosure of grand jury testimony - violated the constitutional rights of a criminal accused." Def. Mem. of law at 10-11, Docket no. 11.  However, the Court finds that such a reading of the complaint is too narrow. Viewing the compliant in the light most favorable to the Plaintiffs, as the court must, Plaintiffs allege that Quintilone told the Complainant prior to her videotaped testimony that her mother was listening to her, that her mother then knocked on the window several times

during the interview, and that a promise of ice cream was made following her testimony. The Court can reasonably infer from these allegations that Quintilone's actions were an attempt to coerce Complainant into implicating T.D. "It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000.). Therefore, a prosecutor's fabrication of evidence in his role as an investigator is a violation of a constitutional right. Id. at 356.

Here, it cannot be determined on the basis of the complaint alone whether Quintilone's actions amount to a fabrication of evidence. At this stage, the Court finds that dismissal on the basis of qualified immunity is premature. Accordingly, Defendants' motion to dismiss the individual claims against Quintilone relating to her procurement of testimony from the Complainant for presentation later to the grand jury is denied and the Plaintiffs may proceed with these claims.

## **CONCLUSION**

For the reasons discussed herein, Defendants' motion to dismiss is granted in part and denied in part. The claims against the County and Moran are dismissed in their entirety as are the claims against Quintilone in her official capacity. The malicious prosecution claims against Quintilone are also dismissed. Plaintiffs, however, may proceed with their remaining claims

against Quintilone based on her actions in procuring the testimony of the infant Complainant.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                            S/ MICHAEL A. TELESCA  
                                                           HON. MICHAEL A. TELESCA  
                                                           United States District Judge

Dated:    Rochester, New York  
            October 16, 2013